**Law Office of Patrick Mause, PLLC**

Patrick W. Mause
290 North Meyer
Tucson, Arizona 85701
State Bar No. 24269
520.342.0000
520.342.0001 (Fax)
EMail: Patrick@PMauseLaw.com

Attorney for Plaintiff Shellie Knawa

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shellie Knawa, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Aetna Life Insurance Company, a foreign corporation; The Boeing Company Non-Union Long-Term Disability Plan, an ERISA-governed long-term disability benefits plan | |
| Defendants. | |

For her Complaint, Shellie Knawa ("Plaintiff"), alleges as follows:

**Parties, Venue, and Jurisdiction:**

1. Plaintiff Shellie Knawa is a resident and citizen of Pima County, Arizona, and was a resident and citizen of Pima County, Arizona at all times material to the Complaint.

2. Defendant Aetna Life Insurance Company ("Aetna") is a foreign corporation that is authorized to do business in Arizona and is doing business in Arizona.

3. Defendant The Boeing Company Non-Union Long-Term Disability Plan (the "Plan") is an ERISA-governed long-term disability (LTD) plan which covers and covered employees in Arizona, including Ms. Knawa.

4. Defendant Aetna is an ERISA claim fiduciary under the Plan.

1

5. Plaintiff's claim is for LTD benefits, and for other benefits to which she may be entitled and which were provided to her under her employer's ERISA-governed benefits plan.

6. The Court has jurisdiction over this matter under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*.

7. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391 because the "breach" of the LTD plan occurred in Pima County, Arizona, and because defendants may be found in Pima County, Arizona.

**Background:  Ms. Knawa Became Totally Disabled From Her Sedentary Occupation In 2012 And Aetna Approved Her Disability Claims**

8. Ms. Knawa began work for Boeing as a computer consultant in 2000.  In 2005, Ms. Knawa was hired full-time as a Programmer Analyst 4.

9. The material duties of Ms. Knawa's occupation required frequent or near-constant typing and other use of the hands and arms.

10. Over time, Ms. Knawa began experiencing increasingly severe and chronic hand and arm pain.

11. By February 10, 2012, Ms. Knawa's hand and arm pain, as well as other medical conditions she had developed, prevented her from performing the material duties of her own occupation.  She therefore stopped work.

12. Because Ms. Knawa was unable to perform the material duties of her own occupation, she applied for benefits under Boeing's short-term disability (STD) plan.

13. As with Boeing's LTD Plan, the STD plan is administered by defendant Aetna.

14. Aetna evaluated Ms. Knawa's claim and determined that her restrictions were consistent with the medical evidence and that she was unable to perform the material duties of her own job.  Accordingly, Aetna approved Ms. Knawa's STD claim.

15. Aetna periodically obtained updated information regarding Ms. Knawa's condition, reviewed that information, and evaluated whether Ms. Knawa remained entitled to benefits under the STD plan.

16. Upon conducting such reviews, Aetna repeatedly found that Ms. Knawa was unable to perform the material duties of her occupation, and therefore continued approving her STD claim. Aetna ultimately approved Ms. Knawa's STD claim through the STD plan's maximum benefits period, 26 weeks.

17. The STD maximum benefit period is coordinated with the period of time under the LTD Plan during which LTD benefits are not payable; known in the industry as the "elimination period." Because the STD and LTD benefits are coordinated, once a claimant exhausts STD coverage there will be no gap in benefits between the STD and LTD claims as long as the claimant remains disabled.

18. After satisfying the LTD Plan's elimination period, Ms. Knawa became eligible for LTD benefits on August 10, 2012.

19. Because the Plan provides 24 months of benefits as long as Ms. Knawa is unable to perform the material duties of her "own occupation," Ms. Knawa would be entitled to benefits through August 10, 2014 as long as she was unable to perform the material duties of a computer programmer.

20. After 24 months of benefits, a claimant is only entitled to receive LTD benefits if she is unable to perform "any reasonable occupation," taking into account whether the occupation was "gainful" with respect to the claimant's previous occupation and pay.

21. Under the Plan, an occupation would have to pay 80% of the claimant's predisability earnings, indexed for inflation, to be considered "reasonable."

22. Under the Plan's "any reasonable occupation" standard pays benefits, as long as the claimant remains disabled, to age 65.

23. In reviewing Ms. Knawa's LTD claim, Aetna determined that Ms. Knawa's occupation was defined as being at the "sedentary demand level."

24. Sedentary work involves sitting for 6-8 hours a day and frequent to near-constant use of the hands.

25. To perform sedentary demand level work, an employee must be able to lift 10 pounds occasionally.

26. Sedentary work is the lowest demand level of work.

27. Leading up to her transition from STD to LTD benefits, Aetna reviewed Ms. Knawa's claim to determine whether she was disabled under the LTD Plan's "own occupation" standard.

28. Aetna determined that Ms. Knawa's claimed restrictions and limitations – the inability to use her hands and arms for more than a few minutes at a time – were supported and consistent with the medical evidence. Accordingly, Aetna approved Ms. Knawa's LTD claim; finding she was unable to perform the material duties of her own sedentary occupation.

29. After initially approving Ms. Knawa's LTD claim, Aetna periodically reviewed her claim to determine whether she remained entitled to benefits. Aetna consistently found that Ms. Knawa's restrictions and limitations were supported by and consistent with the medical evidence, and that they prevented her from performing the material duties of her own, sedentary-demand-level occupation due to her inability to use her hands and arms for more than a few minutes at a time and for only a limited amount of time each day.

30. Aetna also periodically requested updated information and forms from Ms. Knawa's treating physicians. Her physicians regularly returned such information and forms confirming that Ms. Knawa remained totally disabled.

**Aetna Terminated Ms. Knawa's Benefits Even Though Her Condition Had Not Improved And Even Though She Remained Unable To Perform Sedentary Work**

31. As Ms. Knawa was approaching the expiration of the LTD Plan's 24 month "own occupation" benefits period, Aetna reviewed her claim to determine whether she remained disabled under the Plan's "any reasonable occupation" standard.

32. Aetna referred Ms. Knawa's claim to Dr. Timothy Craven to review the medical evidence and formulate an opinion about Ms. Knawa's restrictions and limitations.

33. Dr. Craven was not asked to, and did not, examine Ms. Knawa.

34. Upon information and belief, Dr. Craven is an Aetna employee.

35. Upon information and belief, Dr. Craven is entitled to certain bonus compensation as an Aetna employee.

36. Upon information and belief, Dr. Craven's bonus compensation is based in part on Aetna's overall financial performance.

37. Alternatively, upon information and belief, Dr. Craven is a consultant medical reviewer who derives a significant portion of his income from performing medical reviews for Aetna.

38. In an April 23, 2014 review, Dr. Craven stated that Ms. Knawa's restrictions included "limited use of her arms, particularly her hands," she "would have problems with frequent repetitive use of her hands," she "would have limited ability with standing and walking," and she suffered from "severe fatigue" which would "limited [sic] her physical capacity in working." Nevertheless, Dr. Craven stated: "In spite of these functional impairments, she should be able to perform sedentary physical level work during the time period 01/01/14 to 08/31/14."

39. On May 22, 2014, Dr. Craven performed an additional review. As part of his review, Dr. Craven reviewed additional information from Ms. Knawa's treating

physicians in which they confirmed that Ms. Knawa was totally disabled, and spoke with Ms. Knawa's primary care physician, Dr. Kristen Lorenz.

40. Dr. Craven noted that Dr. Lorenz informed him that Ms. Knawa "is limited on her of her hands [sic] and arms," she "is able to lift up to 5 lbs but only occasionally," and she "takes Norco for pain and it causes sedation."

41. Based on the new information, Dr. Craven refused to alter his opinion that Ms. Knawa was capable of full-time sedentary work. Additionally, Dr. Craven added: "There is no evidence of a functional impairment due to the medication she is taking."

42. Based on Dr. Craven's review, Aetna terminated Ms. Knawa's LTD benefits effective August 9, 2014.

### Ms. Knawa Timely Appealed Aetna's Denial And Submitted Extensive Evidence Confirming That She Remained Disabled

43. Ms. Knawa timely appealed Aetna's decision on January 26, 2015.

44. With her appeal, Ms. Knawa included extensive medical evidence confirming her ongoing disability. This information included, but was not limited to:

    A. Records from Ms. Knawa's primary care physician, Dr. Kristin Lorenz, documenting among other things that "there is very little that patient could do. Her ability to sit, take tension, converse, or use her upper extremities for any length of time is not possible. With her forearm pain and tendinitis using her hands repetitively is not possible."

    B. January 25, 2015 letter from Dr. Lorenz stating, among other things, that Ms. Knawa:

        i. She has reviewed Dr. Craven's "'Physician Review Claim Data' dated 4/3/2014 and 5/14/2014. I disagree with the assessment that Shellie should be able to perform sedentary work."

        ii. "Sedentary work, by definition, requires repetitive use of upper extremities. The functional impairment of her hands, forearms,

elbows, and shoulders preclude the use of her upper extremities to any consistent degree."

iii. "Patient also has difficulty sitting for any significant period of time… At this point she is unable to sit for longer than 15 minutes and needs to stand, walk, and lie down repeatedly through the day to limit pain exacerbations."

iv. "Further, patient's symptoms of mental fog and extreme fatigue do not allow her to be able to mentally focus or concentrate or to attend work physically with any kind of predictable or reliable frequency."

v. "I do not believe that Shellie can work in any occupation, including a 'sedentary level work' as a result of her hand, forearm, elbow, shoulder pain and limited mobility (which are clearly exacerbated by activity), her diffuse myalgias, mental fog, and extreme fatigue."

vi. "I have worked with this patient for many years and believe completely that she has been forthright in her subjective description of symptoms."

vii. "Shellie originally was removed from work on 2/9/2012.  Her disability was significant at that time and it has worsened.  Clearly since January 2014 she has been completely disabled and unable to work in any capacity, including sedentary physical level work."

C. Medical records from Ms. Knawa's treating rheumatologist, Dr. James Evans, documenting among other things that Ms. Knawa continued to suffer "ongoing severe, diffuse musculoskeletal pain including joints in extremities upper and lower… Pain is essentially debilitating."

D. A January 11, 2015 letter from Dr. Evans stating, among other things, that:

      i. Ms. Knawa "would be severely restricted in terms of trying to perform in the work place due to her medical conditions. She is very symptomatic about her hands, elbows, shoulders and arms, and could only reasonably be expected to perform activities with her upper extremities for only a few minutes at a time, in minimal time during an eight hour workday."

      ii. "Her chronic musculoskeletal and soft tissue pain would limit her ability to sit in one place and work for any reasonable period of time."

      iii. "I have reviewed the [Dr. Craven] 'physicians review' provided by Aetna. I do not agree that she [Ms. Knawa] should have been able to perform sedentary work during 2014. I do not agree that she is able to work in her own occupation as a programmer analyst."

      iv. "Given her history and the clinical evaluation of her situation that I have experienced over the past two years of seeing her, I do not feel that it is reasonable to expect that she is able to work at any type of meaningful occupation or employment situation at this time nor in 2014."

      v. "I doubt she will make any significant improvement in the near future in terms of being able to work or be employed in any meaningful way."

E. Report of December 4, 2014 Functional Capacity Evaluation performed by Sandy Goldstein, PT, CDMS, objectively documenting Ms. Knawa's restrictions and limitations, and concluding that Ms. Knawa is "disabled totally from employment or work at home."

F. December 17, 2014 letter from Mr. Goldstein summarizing Ms. Knawa's FCE and stating, among other things, that:

      i. "Ms. Knawa was unable to sit for more than 15 minutes during her FCE paperwork and intake."

     ii. "Moreover, during seated tests… she demonstrated significant deviations in body position in order to perform the task. She had to pause occasionally to adjust position. She frequently stopped to shake out her hands."

    iii. "The FCE was valid and reliable. Ms. Knawa was cooperative and provided full, consistent effort during testing. Problems reported and physical limitations demonstrated were substantiated by objective findings."

    iv. Then, commenting on Aetna's medical reviews, Mr. Goldstein stated that:

        1. "Timothy Craven, MD, MPH in his report dated 4/23/2014 confirms that Ms. Knawa has a functional impairment with limited use of multiple joints… he agrees with the FCE findings that show that she would have problems with frequent repetitive use of her hands."

        2. "Dr. Craven then affirms the findings of Ms. Knawa's primary treating family practitioner, i.e., that Ms. Knawa could only perform occasional hand gripping and repetitive movement of her hands."

        3. "He then goes on to opine that she can perform sedentary physical demand level work."

        4. "The opinions arrived at by Dr. Craven and Aetna appear to be biased, skewed and contradictory. All physicians agree (including consultative reviews), that Ms. Knawa has significant

limitations with her bilateral upper extremity function. This fact is not in dispute."

5. "However, the consultative reviews and subsequent opinions that have been drawn from the reviews appear to ignore these limitations. It is almost as if the consultative reviewers are claiming that sedentary requires no use of the arms at all."

6. "Of course, this could not be further from the truth. Sedentary work requires frequent use of the hand and arms to perform a variety of tasks."

7. "The medical in Ms. Knawa [sic] is indisputable with regard to her bilateral upper extremity impairments. Ms. Knawa is severely limited in the use of both arms and hands for work tasks. Within several minutes of using her hands and arms for work tasks, she experiences pain and concomitant impairment in aptitude for finger and hand dexterity tasks that logically preclude her from using her hands or arms for work."

8. "The FCE results do not support a return to work in any capacity including sedentary work".

45. With her appeal, Ms. Knawa also requested information from Aetna to evaluate the effect of its and its reviewing consultants' financial conflicts and incentives on Aetna's decision terminating her LTD benefits.

**Aetna Failed To Make A Decision Within The Deadlines Prescribed By ERISA**

46. Under ERISA, Aetna has 45 days from the receipt of Ms. Knawa's appeal to make a final determination. However, Aetna may extend its deadline by an additional 45 days if additional time is necessary and required. Thus, the maximum period for Aetna to reach a final decision on Ms. Knawa's appeal is 90 days after her appeal is submitted.

47. Ms. Knawa faxed her appeal letter to Aetna on January 26, 2015. She also mailed her appeal letter to Aetna on that date with a CD containing her appeal documentation.

48. Ninety days from that date is April 26, 2015.

49. Adding five days for the mailed CD containing Ms. Knawa's appeal letter and appeal documentation to reach Aetna, Aetna's maximum, 90 day deadline for issuing a final decision on Ms. Knawa's claim was May 1, 2015.

50. On March 12, 2015, Aetna wrote to Ms. Knawa through her counsel and stated that it needed a 45 day extension to make a final decision on her appeal, and that "We expect to be able to render a decision by April 26, 2015."

51. Aetna failed to make a final decision on Ms. Knawa's claim by April 26, 2015.

52. Aetna failed to make a final decision on Ms. Knawa's claim by May 1, 2015. Therefore, Aetna failed to make a final decision on Ms. Knawa's claim within the deadlines prescribed by ERISA.

53. After Aetna failed to make a decision on Ms. Knawa's claim, she contacted Aetna to determine the status of its decision. Aetna acknowledged that it had not made a decision on her appeal. Aetna asked for, and Ms. Knawa agreed to, a brief extension of time for Aetna to make a decision on her claim.

54. Again, Aetna failed to make a decision on Ms. Knawa's claim. Again, Ms. Knawa contacted Aetna to determine the status of her claim. Aetna again asked for, and Ms. Knawa agreed to, a brief extension of time for Aetna to make a decision on her claim.

55. Aetna failed to make a decision on Ms. Knawa's claim within the extended timeframe Ms. Knawa agreed to. Aetna has not issued a final decision on Ms. Knawa's claim.

**Because Aetna Has Failed To Make A Decision On Ms. Knawa's Appeal, Ms. Knawa's Claim Is "Deemed Exhausted" And Is Therefore Ripe**

56. Under ERISA, because Aetna failed to make a final decision on Ms. Knawa's LTD appeal within the deadlines prescribed by ERISA, Ms. Knawa is deemed to have exhausted her administrative remedies. 29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

57. Ms. Knawa's claim for LTD Plan benefits is therefore ripe.

58. Because Aetna failed to make a final decision on Ms. Knawa's LTD appeal within the deadlines prescribed by ERISA, Ms. Knawa is entitled to *de novo* review of her LTD claim. *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1103 (9th Cir. 2003).

**Aetna Has A History Of Biased, Improper Claims Administration**

59. Ms. Knawa alleges that Aetna has a parsimonious claims handling history.

60. Ms. Knawa further alleges that Aetna has an improper and likely fraudulent claims handling history, including that Aetna improperly pressured and/or pressures reviewing doctors to change their opinions if he or she gave a benefits-favorable opinion.

61. Specifically, Ms. Knawa alleges that in the past, Aetna received a benefits-favorable disability review; Aetna called the reviewing doctor for the given "Reason: addendum"; pressured the reviewing doctor to change her opinion in the phone call; failed to properly document the substance of the call as required under ERISA in order to omit the existence of its improper behavior from the ERISA administrative record; and then relied on the reviewing doctor's so-called "Addendum" to improperly deny

1  disability benefits.  *See Ortiz v. Cox Enterprises, Inc. Long Term Disability Plan*, Case
2  No. 4:14-cv-02309-DCB (D. Ariz., filed August 27, 2014), Complaint (Doc. 1) at pp. 14-
3  17.

4      62.      Furthermore, in that case, the plaintiff alleged that Aetna retained a so-
5  called "independent" doctor to review her claim; that the reviewing doctor determined
6  that "according to all of the medical records reviewed, it appears as though the claimant's
7  long-term disability is supported"; that Aetna then called the reviewing doctor "Reason:
8  addendum"; that Aetna improperly pressured the reviewing doctor to change her opinion
9  in order to support the denial of benefits; that Aetna failed to further document the
10 substance of its call with the reviewing doctor so that its improper behavior would not be
11 documented in the ERISA administrative record; that the "independent" doctor then
12 completed a brief addendum which, although it completely reversed her previous
13 determination, stated "There is nothing more in this paperwork that changes my
14 decision… the decision remains the same… no evidence of impairment from fatigue and
15 cognitive difficulties found in the records that would preclude full time employment."

16      63.      Ms. Knawa alleges that Aetna may have engaged in such improper conduct
17 in this case, or that it may have retained reviewing physicians who have been improperly
18 influenced to deny claims in the past.

19      64.      Ms. Knawa further alleges upon information and belief that Aetna's
20 inability to make a final decision within the deadlines prescribed by ERISA, and
21 therefore its violation of ERISA, occurred because Aetna has engaged in the same or
22 similar behavior in this case in order to obtain a denial-favorable decision.

23      65.      Ms. Knawa further alleges upon information and belief that Aetna
24 deliberately refers claims physicians to provided so-called "independent" reviews that it
25 knows or expects will support a claim's denial or who have been improperly influenced
26 in the past to do so.

66. Ms. Knawa further alleges upon information and belief that if Aetna receives too many benefits-favorable decisions from the same reviewing physician, it will no longer use that physician's services.

67. Ms. Knawa alleges upon information and belief that Aetna has engaged in these types of improper behavior in the administration of her LTD claim.

68. Upon information and belief, Aetna engages in this improper conduct in order to lower claim payments.

69. Upon information and belief, Aetna engages in such conduct regardless of whether the LTD benefits are fully insured and paid by Aetna, funded or paid by the employer, or funded or paid through a trust or other funding source. In the *Ortiz* case, the LTD benefits at issue were administered, but not insured, by Aetna.

70. Upon information and belief, Aetna engages in such conduct in claims that are not fully insured by Aetna. Upon information and belief, Aetna understands and believes that if it approves too many claims, then the funding source may seek a different claim administrator to achieve better financial outcomes, thus reducing the plan's financial liabilities.

71. Ms. Knawa therefore alleges that Aetna has an inherent financial conflict of interest that influences and drives the selection of reviewing physicians and the reviews Aetna and its reviewers conduct.

72. Aetna further alleges that Dr. Craven and the remainder of the Aetna personnel involved in Ms. Knawa's claim have financial conflicts of interest that motivated their conduct in this case; including that such personnel are eligible for and receive bonus compensation based on the company's performance. Therefore, for example, these employees know and understand that if Aetna approves too many claims under the Boeing LTD Plan, causing financial strain on Boeing and/or the Plan, Boeing and/or the Plan may switch to a different claim administrator. If this were to occur, upon

information and belief, Aetna would lose significant profits, thus cutting into any monies allotted to or available for employee bonus compensation.

73. Aetna's misconduct violates ERISA and constitutes a series of procedural irregularities under ERISA.

## Count One:  Claim for Benefits Under ERISA

74. Aetna has failed to make a decision on Ms. Knawa's appeal within the deadlines imposed by ERISA.  Accordingly, Ms. Knawa is deemed to have exhausted her administrative remedies and her claim is ripe for judicial review.  29 C.F.R. § 2560.503-1(l).

75. Under the Plan, Ms. Knawa was, and remains entitled to ongoing LTD benefits since the date her benefits were terminated.

76. Ms. Knawa's disability is permanent.

77. Ms. Knawa has been damaged by Aetna's improper decision terminating her LTD benefits.

78. Ms. Knawa has been damaged by Aetna's failure to make a timely decision on her LTD appeal.

79. The Plan does not grant Aetna discretion to determine entitlement to benefits.  Therefore the Court must review Aetna's decision under the *de novo* standard of review.

80. Furthermore, because Aetna failed to make a final decision on Ms. Knawa's claim within the deadlines prescribed by ERISA, she is entitled to *de novo* review of her claim.

81. Under the *de novo* standard or review, Aetna's decision was erroneous, contrary to the plan terms, and contrary to the medical evidence.  Ms. Knawa is entitled to continuing LTD benefits under the Plan.

82. Even under the abuse of discretion standard of review, Aetna abused its discretion because its decision terminating Ms. Knawa's disability benefits was arbitrary

and capricious and was caused or influenced by Aetna's, its reviewing physicians', and the Plan's financial conflicts of interest or improper behaviors or motivations. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2). Ms. Knawa is entitled to continuing LTD benefits under the Plan.

83. Upon information and belief, Aetna, the Plan, the purportedly "independent" physicians who evaluated Ms. Knawa's claim, and the Aetna personnel involved in Ms. Knawa's claim suffer from financial conflicts of interest which infected the claim process and which precluded a full and fair review of Ms. Knawa's claim.

84. Aetna and the Plan have a parsimonious claims handling history.

85. Aetna has a history of improper claim administration.

86. Ms. Knawa is entitled to discovery regarding the effects of the procedural irregularities that occurred during the claims handling process and regarding the effects of Aetna's, its reviewing physicians', its employees', and the Plan's financial conflicts of interest, biases, and motivations on the decision terminating Ms. Knawa's LTD claim.

87. Ms. Knawa has been injured and suffered damages in the form of lost LTD benefits as a result of Aetna's and/or the Plan's wrongful decision to terminate her disability benefits and their failure to timely reinstate her benefits.

88. Ms. Knawa has been further injured and suffered damages by losing other benefits to which she may have been entitled under her employer's ERISA-governed benefits plan.

89. Pursuant to ERISA, 29 U.S.C. § 1132, Ms. Knawa is entitled to recover unpaid disability benefits, prejudgment interest, reasonable attorney's fees, and costs from the Plan, and/or Aetna; and/or is entitled to an order enforcing her right to disability benefits under the LTD plan.

1    WHEREFORE, Plaintiff Shellie Knawa prays for judgment as follows:

2    A.    For long-term disability benefits due under the Plan and/or an order enforcing her right to benefits under the Plan;

4    B.    For any other benefits Ms. Knawa may be entitled to receive under her employer's ERISA benefits plan due to her disability;

6    C.    For prejudgment interest at the maximum legal interest rate until paid;

7    D.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

9    E.    For such other relief as the Court deems just and proper.

DATED this 25th day of May, 2015.

                        LAW OFFICE OF PATRICK MAUSE, PLLC

                        By  s/ Patrick W. Mause
                                Patrick W. Mause
                                Attorney for Plaintiff